IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA HEIER | ) | CASE NO. 5:19-cv-01955-SL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | JUDGE SARAH LIOI |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| JEFF CZIKA, et al | ) | |
| | ) | |
| Defendants. | | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AND AWARD OF DAMAGES AGAINST DEFENDANTS JEFF CZIKA, RONI CZIKA, BEAUTY CALL, LLC, AND DO BEAUTY CALL, LLC.**

## I. INTRODUCTION.

Plaintiff Jessica Heier, by and through undersigned counsel, moves this Court pursuant to Fed. Civ.R. 55(a) for an Order of Default Judgment and Award of Damages Defendants Jeff Czika, Roni Czika, Beauty Call, LLC, and Do Beauty Call, LLC on the grounds that Defendants failed to plead or otherwise defend this action as required by the Civil Rules. On February 19, 2020, the Clerk entered default against Defendants (ECF No. 13). Thus, Defendants in default and the Court should enter an order of default judgment against each of them accordingly on Counts V, VI, VII, and VIII.[1]

---

[1] Heier is not seek judgment on Counts I-IV as she now believes that she is precluded from pursuing those claims based on the settlement agreement the remaining Counts are premised on. Accordingly, Heier is withdrawing Counts I, II, III, and IV.

## II. PROCEDURAL AND FACTUAL HISTORY.

### A. The Prior Litigation And Settlement Between The Parties.

Prior to this litigation, Heier had filed suit against Defendants Jeff Czika, Roni Czika, Beauty Call, LLC in the District Court for the Northern District of Ohio alleging, *inter alia*, that Defendants had violated the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA") by failing to pay her overtime and retaliating against her when she complained about the failure to pay overtime by terminating her employment.[2] That litigation was stylized as *Jessica Heier v. Beauty Call, LLC*, N.D.OH, Case No. 5:17-cv-01732 (Herein after, "*Heier I*").

In response to Heier's lawsuit, Defendants filed counterclaims against Heier. Heier then amended her complaint to add a counts for post-employment retaliation in violation of the FLSA and the OMFWSA because Defendants counterclaims were frivolous, objectively baseless, and asserted for the purposes of retaliating against Heier.

After several months of litigation, *Heier I* was resolved by a settlement between the parties. Pursuant to the settlement agreement, which was approved by the Court on June 27, 2018, Defendants would pay Heier a total of $2,250.00 over six payments totaling $375.00 each.[3] Although Heier valued her claims at being worth significantly more, she was willing to settle for this low amount based on Defendants' representations regarding their purported insolvency.[4]

### B. Defendants Make One Payment And Then Intentionally And Willfully Refuse To Make Any Further Payments While Mocking And Disparaging Heier Publicly.

On or about November 16, 2018, Defendants made a payment of $377.70 in conformity with the terms of the settlement agreement.[5] However, Defendants failed to make any further payments after this initial payment. Subsequently, in February of 2019, the undersigned, Attorney Chris Wido,

---

[2] See Heier I Complaint, attached as Exhibit "1."
[3] Settlement Agreement, attached as Exhibit "2."
[4] See Declaration of Jessica Heier, attached as Exhibit "3," ¶ 4.
[5] Exhibit 4. It is unknown why Defendants paid $2.70 extra.

2

received a profanity-laden voicemail from Defendant Roni-Czika in which she renounce her obligations to pay the settlement and demanded that the undersigned meet with her so she could "prove" that Heier was a "liar."[6] Understanding Roni Czika to be represented by counsel at that time, Wido did not respond.[7]

During that same time period -- February of 2019-- Heier was shocked when she was approached by a mutual friend of hers and Roni Czika, Stacy Noack-Batton, at the Blue Willow Bar and Grill in Macedonia, Ohio, who told Heier that Roni Czika had told her and others that Heier had "lost" *Heier I*; that Defendants had "beat" Heier; and that "the Court found out [Heier] was lying."[8] Defendants do not dispute any these allegations.[9]

On March 7, 2019, Heier moved the Court to enforce the settlement reached between the parties. However, on May 16, 2019, Magistrate Judge Kathleen Burke refused to enforce the settlement, finding that the Court lacked jurisdiction to do so.[10]

Subsequently, Heier continued to hear from others about disparaging comments Roni Czika was making about her to the public, and even members of her own family. Indeed, Heier's aunt, Ashley Tufts, told Heier that Roni Czika had told her that Heier was a "liar" and an "idiot" whom Defendants had "tricked" Heier into accepting a low settlement they had no intention of ever paying, and that Roni Czika believed that she had gotten "the last laugh" by "screwing" Heier.[11] These statements ended up severely damaging Heier's relationship with several of her friends and damaging her reputation as a stylist.[12] One mutual friend of Heier and the Czikas, Jason Mingus,

---

[6] Wido Declaration, attached as Exhibit 5, at ¶ 20.
[7] *Id*.
[8] Heier Declaration at ¶ 9.
[9] See unanswered Request for Admission sent to Defendants on May 14, 2020, attached as Exhibit 6, RFA's Nos. 89-92, 94-98; Email to Roni Czika serving Plaintiff's Request for Admissions, attached as Exhibit 7; and certified mail receipt of Plaintiffs Request for Admissions on Defendants, attached as Exhibit 8.
[10] Complaint at ¶ 78-87.
[11] Heier Declaration at ¶ 10-11
[12] *Id*. at 17-18.

even went as far as dismissing Heier as "sue-happy."[13] As a result of Defendants' conduct, Heier has suffered significant emotional distress:

- "The Stylist community/industry is small and tight-knit. I have been asked about *Heier I* and Roni Czika's allegations more times than I can count. It is embarrassing."[14]

- "I feel like most people seem to believe [Czika] because she has money and I don't. Even my Aunt has acted differently towards me ever since Roni Czika said things to her about me that are not true…. I fear that because of my childhood, my Aunt is inclined to believe Czika over me."[15]

- "Because of all of this, I moved from Macedonia, Ohio to Hubbard, Ohio because I did not want to suffer any further embarrassment."

- "I have been depressed and anxious ever since I got fired from Beauty Call…the Czikas' conduct since then has made things so much worse. It is like having a knife removed, to only then be stabbed again even deeper."[16]

- "I feel like my life is going nowhere, that I will always be poor, and that people with money, like the Czikas, will never treat me right or fairly. The Czikas' conduct has seriously damaged my self-esteem and view of my place in society. It has complicated and, in some cases, damaged my professional reputation…"[17]

- "[M]y education and passion for the beauty industry has been destroyed. I feel like it was a waste of time to even pursue [Heier I], or to pursue a career in the beauty industry. Roni Czika's statements about me and *Heier I* have been brought up so often to me that I feel like I am "blacklisted" by other salons. It has gotten to the point that I am afraid to even apply anywhere."[18]

- "I have always struggled with depression, anxiety, and my self-esteem. This situation has made things ten times worse…. I have been so depressed that I have been unable to care for my seven-year-old daughter, who is now living with my mom. I have not seen my daughter in several months."[19]

Aside from the damaging and undisputed statements made by Roni Czika, Defendants do not dispute that they have had the means to pay the settlement but have simply chosen not pay it as

---

[13] Heier Declaration at ¶ 18
[14] *Id*. at ¶ 17.
[15] *Id*. at ¶ 20.
[16] *Id*. at ¶ 21.
[17] *Id*. at ¶ 22.
[18] *Id*. at ¶ 23.
[19] Heier Declaration at ¶ 24.

4

a means of retaliating against Heier.[20] Defendants do not dispute that in the nearly nineteen (19) months since they made their first payment towards the settlement, they had the means to pay but simply chose not to.[21] Indeed, since abandoning the settlement agreement, Defendants have posted publicly about their expensive vacations on social media, such as a trip for their family to Disney World in September of 2019.[22] Defendants do not dispute that this vacation cost more than the entire amount owed to Heier under the settlement agreement.[23] Heier was insulted and angered when she learned of this trip on Facebook.com, complete with photos, one of which included a statement by Jeff Czika that "my (Disney themed shirt) says most expensive day ever."[24]

### C. Defendants Respond To This Litigation By Attempting To Convince Heier To Let All Defaulted Defendants Off The Hook Except Roni Czika.

Heier filed the instant matter on August 26, 2019. [ECF No. 1]. Defendants then failed to answer or plead in response to the Complaint, and the Clerk entered default against Defendants on February 19, 2020. [ECF No. 13].

On March 5, 2020, Roni Czika contacted Wido and attempted to negotiate a settlement.[25] On March 17, 2020, Wido responded to Roni Czika's offer with a counteroffer and proposed terms.[26] Roni Czika did not hesitate to accept Wido's counteroffer wholesale, emailing her acceptance the following day, March 18, 2020.[27] However, Roni Czika then demanded that the settlement "with Jeff Czika and Do Beauty Call released from this completely."[28] Wido responded

---

[20] RFA No. 95
[21] RFAs Nos. 10-88.
[22] Heier Declaration at ¶ 13-14.
[23] RFA No.
[24] Heier Declaration at ¶ 15.
[25] Exhibit 9.
[26] *Id.*
[27] *Id*.
[28] *Id*.

5

later that day by explaining that Heier's offer was not being made only to Roni Czika, but as to all Defendants, and that as a result, all Defendants would need to be responsible for the settlement:

> Roni,
>
> I will draft something up for your review. To be clear, all Defendants (including Jeff and Do Beauty Call) will be released. **However, Jeff and Do Beauty Call will need to be parties to the settlement agreement only because we want to ensure that the settlement is paid.** However, by doing this through a private settlement agreement, there will be no judgment or liens on anyone's credit, etc.
>
> Because this case involves claims under the FLSA, there will need to be a joint motion for approval by the Court that I will prepare and circulate.[29]

Subsequently, Wido sent Defendants a settlement agreement that provided for a global release of claims against all Defendants.[30] When Roni Czika did not respond after several days, Wido again followed up with her.[31] On March 31, 2020, Roni Czika replied, stating only "Sounds good but I would also request Jeff to be dismissed off all and any documents/settlement."[32] Czika later followed up: "I'm not sure I can agree with Jeff on anything."[33]

On April 1, 2020, Roni Czika had a friend of hers, Attorney Jessica Bacon, contact Wido. Bacon was adamant that she did not represent Defendants, but was merely doing them a favor by talking to Wido.[34] Bacon asked certain questions about *Heier I* and again communicated Roni Heier's request that only she be responsible for the settlement in this matter.[35] When Wido pressed Bacon about whether Roni Czika was seeking to exclude the other Defendants from responsibility for the settlement because Roni Czika planned to again refuse to pay, Bacon did not deny it and further stated that she was "not permitted to discuss that."[36]

---

[29] *Id*. (**Emphasis** added).
[30] *Id.*
[31] Exhibit 9.
[32] *Id.*
[33] *Id.*
[34] Wido Declaration at ¶ 21.
[35] *Id*.
[36] *Id*.

On April 2, 2020, Czika again wrote Wido, seeking to renegotiate the settlement, and stated that "it seems ridiculous to have someone who has zero involvement in said to be included in a lawsuit. Jeff has no schooling or training in the cosmology field thus would have no reason to be in involved with Beauty Call salon" while again insisting that he be "removed" from this case and not responsible for the settlement payment. Notably, Roni Czika's representations are contradicted by Jeff's Czika's own Facebook.com profile:

[37]

In response, Wido offered to agree to settle against Roni Czika only, with the explicit understanding that Heier would not waive her right to a judgment against Jeff Zika or the Beauty Call entities.[38] To this, Roni Czika replied "I do wish to be settled out of this case separately. Please send an agreement…."[39]

On April 16, 2020, the parties filed a motion for additional time to file a joint motion to approve the settlement. In order to ensure that Heier retained her right to seek a judgment against

---

[37] Available at https://www.facebook.com/jeff.czika.
[38] Exhibit 9.
[39] *Id*.

7

Jeff Czika and the Beauty Call entities, Heier proposed that the Court stay this litigation as against those parties until Roni Czika completed making all of the payments that she was insisting that she alone be responsible for [ECF No. 15]. However, as part of its order allowing the parties additional time to file a joint motion to approve the settlement, the Court declined to stay judgment against the remaining Defendants [ECF No. 16].

On April 22, 2020, Wido notified Roni Czika of the Court's ruling, and advised her that as a result, "any settlement in this case must include all Defendants, or there is no settlement…. Please advise as to your position… I can guarantee you that if we are forced to do garnishments, place liens, etc, it won't be for only $321 as month."[40] To date, Roni Czika has never responded.

**D.  Heier Serves Multiple Requests For Admission On Defendants Which Go Unanswered.**

On May 14, 2020, Heier served several Requests for Admission on Defendants. Heier served the discovery request on Roni Czika by electronic mail at the email address she had been using to communicate with Wido, roniczika@gmail.com.[41] Further, the discovery request served on Roni Czika and the other Defendants by FedEx at their address of record, 211 Northfield Circle, Bedford, Ohio, 44146.[42] Because Defendants never responded to the Requests for Admission, nor took any action to deny or object to them, they are now deemed admitted as a matter of law pursuant to Civ. R. 36.[43]

---

[40] Exhibit 9.
[41] Exhibit 7.
[42] Exhibit 8.
[43] *See* Fed. R. Civ. P. 36(a)(3); see also *Brady v. Stone*, No. 08-13463, 2010 WL 2870208, at *12 (E.D. Mich. July 21, 2010) ("As Plaintiff has failed to answer or object to Defendants' requests for admission, the Court will deem the matters within the requests admitted pursuant to Rule 36."); *Fulcher v. Wyndham Worldwide Operations, Inc*., 2019 WL 4143292, *2 (Aug. 30, 2019) ("Simply ignoring discovery requests is rarely, if ever, proper. Because Plaintiffs did not respond within thirty days, the Requests for Admission are deemed admitted.").

### III. DEFAULT JUDGMENT STANDARD

Applications for default judgment are governed by Fed. R. Civ. P. 55. Following the party's application for default under Rule 55(b)(2), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *IBEW Local Union 82 v. Union Lighting Prot.*, 2012 U.S. Dist. LEXIS 20964 (S.D. Ohio). While liability may be shown by well-pleaded allegations, the Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id*. at *2. To do so, the civil rules "require that the party moving for a default judgment must present some evidence of [their] damages." *Id.; Mill's Pride, L.P. v. W.D. Miller Enterprises, LLC*, 2010 U.S. Dist. LEXIS 36756, at *1 (S.D. Ohio).

### IV. HEIER'S TESTIMONY, DEFENDANTS' ADMISSIONS, AND THE FACTS ALLEGED IN THE COMPLAINT ESTABLISH DEFENDANTS' LIABILITY.

The facts in this case are undisputed. As stated above, Heier and Defendants agreed to a settlement of a prior action brought under the FLSA and the OMFWSA. After making one of six scheduled install payments of only $375.00, Defendants willfully and intentionally chose to stop making payments, while simultaneously engaging in a campaign of vitriol and disparagement against Heier. It is undisputed that Defendants did not fail to pay due to an inability to pay, but as a deliberate choice to retaliate against Heier.[44] Instead of paying the settlement and overtime wages that were due to Heier, Defendants retained the relatively small monthly payment for themselves while they went on a vacation to Disney World in Orlando, Florida.[45] In the meanwhile, Heier's social and professional standing crumbled due to Roni Czika's lies about Heier and *Heier I*, causing Heier to suffer severe emotional distress.[46] Heier went as far as relocating from Macedonia, Ohio, to Hubbard, Ohio, so she could "start over" and avoid the ridicule

---

[44] RFAs Nos. 10-88,
[45] RFAs Nos. 81-83
[46] Heier Declaration at ¶ 12-25.

9

she was consistently receiving over being "sue happy" and "caught lying in court."[47] As a result of her depression, Heier has been unable to care for her young daughter, who is currently living with Heier's mother in Macedonia.[48] Heier now wishes that she had never sued Defendants in *Heier I*.[49]

## V. HEIER IS ENTITLED TO THE RELIEF REQUESTED.

### A. Heier Is Entitled To The Remaining Balance Of The Unpaid Settlement.

As stated in the Complaint and above, the settlement agreement resolving *Heier I* called for Defendants to pay Heier $2,250.00.[50] Of this amount, Defendants only paid $377.70.[51] There is no dispute that Defendants are joint and severally responsible for paying the remaining balance.[52] Accordingly, Heier is entitled to judgment in her favor in the amount of $1,872.30 for Counts V (Breach of Contract) and VI (unjust enrichment).

### B. Heier Is Entitled To Emotional Distress Damages Based On Defendants' Unlawful FLSA Retaliation.

#### 1. *Legal Standard For FLSA Retaliation*.

To establish a claim for retaliation under the FLSA, a plaintiff show (1) that they engaged in protected activity, (2) the would-be retaliator knew of that protected activity, (3) thereafter, the would-be retaliator took action adverse to the plaintiffs, and (4) there was a causal connection between the protected activity and the adverse action.[53] Both current and former employees are protected from retaliation under the FLSA.[54] An adverse action can "'extend[] beyond workplace-

---

[47] *Id.* at 20.
[48] *Id.* at 24
[49] *Id.* at 25.
[50] Exhibit 2.
[51] Exhibit 3.
[52] RFA No. 4.
[53] *Nasrallah v. Lakefront Lines, Inc.*, N.D.Ohio No. 1:17 CV 69, 2017 WL 2291657.
[54] *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 & 67 (2006); *Dunlop v. Carriage Carpet Co.,* 548 F.2d 139, 147 (6th Cir. 1977).

related or employment-related retaliatory acts and harm' and includes actions that 'could well dissuade a reasonable worker from making or supporting a (claim under the FLSA).'"[55]

Heier has readily demonstrated retaliation in violation of the FLSA. Even if the Court were to discount Defendants' binding admission that they intentionally refused to pay the settlement with the purpose of retaliating against Heier, Heier can also independently establish each element of her claim. Indeed, Heier engaged in protected activity by bringing *Heier I*, and to the extent Defendants participated in and eventually agreed to settle that litigation, there can be no dispute that they were aware of said protected activity. Certainly, a purposeful refusal to honor the terms of the settlement, coupled with a deliberate smear campaign, satisfies the adverse action element. Indeed, Heier has testified that as a result of Defendants retaliatory conduct, she wishes she had never brought *Heier I*.[56] Finally, the adverse actions taken by Defendants are clearly and directly intertwined with the fact that Heier engaged in brought *Heier I* against Defendants. Accordingly, Heier has established a prima facie case of retaliation. And, because Defendants offer no defense or legitimate, nonretaliatory reason for their adverse actions against Heier, Heier is entitled to judgment in her favor on her FLSA retaliation claim.

## 2. *Heier Is Entitled To Damages For Her Emotional Distress.*

It is well established that victims of FLSA retaliation may recover damages for emotional distress. In *Moore v. Freeman*, the Sixth Circuit Court of Appeals held:

> Although (29 U.S.C §216(b)) does not explicitly allow damages for emotional injuries, **a plain reading of the text of the provision indicates that it does not limit the type of damages that are available**. As the Seventh Circuit pointed out in *Travis v. Gary Community Health Center, Inc.*, 921 F.2d 108, 112 (7th Cir.1990), "the 1977 amendment does away with the old limitations without establishing new ones." It allows any legal or equitable relief that is appropriate to further the purposes of § 215(a)(3), one of which is to ensure that employees feel free to report grievances under the FLSA. See *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960) ("Plainly, effective enforcement could ... only be expected

---

[55] *Burlington N. & Santa Fe Ry. Co*, at 56, 67. See also *Nasrallah,* *8-9 (finding letter threatening Rule 11 sanctions to constitute an adverse action).
[56] Heier Declaration at ¶ 25.

11

> if employees felt free to approach officials with their grievances. This [is the end that] the prohibition of [§ 215(a)(3) ] against discharges and other discriminatory practices was designed to serve."). The statutory scheme contemplates compensation in full for any retaliation employees suffer from reporting grievances, and there is no indication that it would not include compensation for demonstrable emotional injuries, as well as economic ones.
>
> * * *
>
> As noted by the Seventh Circuit, which is the only other circuit to address at length the question of whether the provision of § 216(b) at issue here provides for damages for emotional distress, **the provision allows for "appropriate" relief, and "compensation for emotional distress ... [is] appropriate for intentional torts such as retaliatory discharge."** *Travis*, 921 F.2d at 112. **In addition, both the Eighth and Ninth Circuits have allowed damages for emotional distress to stand without directly addressing the issue**. See *Broadus v. O.K. Indus., Inc.*, 238 F.3d 990, 992 (8th Cir.2001); *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir.1999). Although the circuits are divided on the question of whether the statute permits punitive damages, compare *Travis*, 921 F.2d at 111–12, with *Snapp,* 208 F.3d at 934, **consensus on the issue of compensatory damages for mental and emotional distress seems to be developing. We now join our sister circuits in finding that the damages awarded by the jury in this case fall within the ambit of § 216(b).**[57]

Heier's testimony alone is sufficient to establish an entitlement to emotional distress damages. Indeed, in *Pineda v. JTCH Apartments*, LLC, the Fifth District Court of Appeals found that sufficient evidence of emotional distress was presented when "Pineda testified to experiencing marital discord, sleepless nights, and anxiety about where his family would live after JTCH made what the jury found to be a retaliatory demand for back rent. Such testimony is sufficient to enable a jury to find that the plaintiff experienced compensable emotional distress."[58] Indeed, "Damages for emotional distress may be appropriate… where the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and **humiliation**."[59] To the extent that Heier has presented sworn testimony detailing her own humiliation at the hands of Defendants and resulting emotional distress, Heier is entitled to emotional distress damages.

---

[57] 355 F.3d 558, 564 (6th Cir.2004) (**Emphasis** added).
[58] *Pineda v. JTCH Apts, L.L.C*., 843 F.3d 1062, 1066 (5th Cir.2016).
[59] *Salinas v. O'Neill*, 286 F.3d 827, 832 (5th Cir. 2002).

Having established that Defendants retaliated against her and caused her to suffer emotional distress, Heier respectfully request that the Court award her $20,000.00 in non-economic damages.

**C. Pursuant To Ohio R.C. § 4111.14(J), Heier Is Entitled To No Less Than $150.00 Per Day For Each Day Defendant's Retaliation Continued.**

Defendants' retaliation against Heier not only violated the FLSA, it also violated Ohio law. Indeed, Section 34a of Article II, of the Ohio Constitution provides:

> No employer shall discharge or in any other manner discriminate or retaliate against an employee for exercising any right under this section or any law or regulation implementing its provisions or against any person for providing assistance to an employee or information regarding the same.

Further, Ohio R.C. § 4111.14(J) provides a specific remedy for violations of the Ohio Constitution's anti-retaliation provision:

> in the case of a violation of an anti-retaliation provision **an amount set by the state or court sufficient to compensate the employee and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued**.

In the case at bar, Defendants began their retaliation against Heier when they failed to make their second payment on December 16, 2018. That retaliation has continued each and every day since as Defendants have continued to refuse to pay Heier and have sullied her name. Accordingly, **as a matter of law**, Heier is statutorily entitled to no less than $150.00 per day since December 16, 2018, or $77,550.00.

**D. Heier Is Entitled To Reasonable Attorney's Fees And Costs.**

Finally, Heier is entitled to attorney's fees that have been incurred in this matter and reimbursement of her costs. R.C. § 4111.10(A) provides "for costs and reasonable attorney's fees as may be allowed by the court."[60] Further, 29 U.S.C. 216(b) expressly provides for the award of attorneys fees for violations of the FLSA. Finally, The authority in Ohio is that attorneys' fees are to be awarded as compensatory damages when the fees are incurred as a direct result of the breach of a

---

[60] Ohio R.C. § 4111.10(A).

13

settlement agreement.[61] The "rationale behind the exception for allowing attorney fees expended as a result of enforcing a settlement agreement is that 'any fees incurred after the breach of the settlement agreement were relevant to the determination of compensatory damages, including those fees [a party was] 'forced' to incur by filing the action.'"[62] In *Shanker v. Columbus Warehouse Ltd. Partnership*,[63] the Tenth District Court of Appeals explained:

> The attorney fees that defendant incurred were the direct result of plaintiffs' breach of the settlement agreement. *Dalessio, supra* (noting that recovery of attorney fees as compensatory damages depend on a finding of a breach of contract). They were sought as compensatory damages, not simply as costs of the action, and the "American Rule" therefore does not apply. When a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees in continuing litigation, those fees are recoverable as compensatory damages in a breach of settlement claim. Because defendant's attorney fees are attributable to and were incurred as the result of plaintiffs' breach of the settlement agreement, defendant is entitled to recover those fees in order to make whole and compensate him for losses caused by plaintiffs' breach.

The highly cited Tenth District Court of Appeals' decision in *Tejada-Hercules v. State Auto. Ins. Co.*,[64] provides an excellent illustration. In *Tejada–Hercules,* the plaintiffs were injured in a car accident and a driver insured by State Automobile Insurance Company was at fault. After the plaintiffs' insurer paid their medical bills, they agreed to settle with the driver. Under the settlement agreement, State Auto was supposed to deliver two checks, one made out to the plaintiffs and another jointly made out to the plaintiffs and their insurer. State Auto delivered the first check to the plaintiffs but made out the second check only to the plaintiffs' insurer. The plaintiffs then brought claims against State Auto for breach of the settlement agreement. The trial court granted summary judgment to the plaintiffs. Despite finding

---

[61] *Wehr v. Petraglia*, 2016-Ohio-3126, 65 N.E.3d 242, ¶ 38 (7th Dist.); *State of Ohio ex rel. Ohio Atty. Gen. v. Tabacalera Nacional S.S.A.*, 2013-Ohio-2070, ¶ 35 (10th Dist.); *McClusky v. Century Bank*, S.D.Ohio No. 2:12-CV-706, 2013 WL 12176597, *7; *Rohrer Corp. v. Dane Elec Corp. USA*, 482 Fed.Appx. 113, 116–17 (6th Cir.2012); *Brown v. Spitzer Chevrolet Co.*, 2012-Ohio-5623, ¶¶ 19-21 (5th Dist.); *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶¶ 19-20 (8th Dist.); *Raymond J. Schaefer, Inc. v. Pytlik*, 2010-Ohio-4714, ¶ 34 (6th Dist.); *Berry Network, Inc. v. United Propane Gas, Inc.*, 2009-Ohio-2537, fn. 1 (2nd Dist. Montgomery); *Tejada-Hercules v. State Auto. Ins. Co.*, 2008-Ohio-5066, ¶¶ 14-18 (10th Dist.).

[62] *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶¶ 19-20 (8th Dist.) (quoting *Tejada–Hercules* at ¶ 10).

[63] 10th Dist. Franklin No. 99AP-772, 2000 WL 726786, *5 (citing *Lake Ridge Academy v. Carney* (1993), 66 Ohio St.3d 376, 381, 613 N.E.2d 183).

[64] 2008-Ohio-5066, ¶¶ 14-18 (10th Dist.).

that the plaintiffs had not suffered any other monetary damages as a result of the breach, the trial court awarded the plaintiffs to their attorney's fees incurred in bringing the action. On appeal, the Tenth District Court of Appeals affirmed the award of attorney's fees as compensatory damages. A critical takeaway from *Tejada-Hercules* is that even when there are absolutely no other economic damages, attorneys' fees must be awarded.

The United States Court of Appeals for the Sixth Circuit, in *Rohrer Corp. v. Dane Elec Corp. USA*,[65] affirmatively applied both *Shanker* and *Tejada-Hercules*. As such, binding precedent makes the award of attorneys' fees and interest appropriate in this case. Moreover, Heier's entitlement to fees is not limited to just work performed in this litigation, but for all time expended attempting to enforce the settlement agreement, dating back to December of 2018.

In the present matter, Wido billed 44.73 hours, which is not unreasonable for the efforts involved in seeking to enforce the settlement and pursuing this case through default judgment.[66] Wido has taken care to exercise prudent "billing judgment" by not including any time for clerical tasks or for those tasks that were performed by paralegals, such as filing documents, or service.

Wido, who is a Partner with the Spitz Law Firm, has extensive experience litigating employment claims in and outside of Ohio. Wido has billed $325.00 per hour in this matter, an amount he has been previously awarded in other wage and hour matters, and below the amount called for per hour in Plaintiff's contract with The Spitz Law Firm.[67] In addition to attorneys' fees, Heier has incurred litigation costs in a total amount of $848.00.[68] In total, Heier requests $15,671.50 for attorneys' fees and litigation costs.

---

[65] 482 Fed.Appx. 113, 115 (6th Cir.2012).
[66] Wido Declaration at ¶ 12; Exhibit B to Declaration.
[67] Wido Declaration at ¶ 6; Exhibit A to Declaration.
[68] *Id*. at ¶ 17-18.

## VI. CONCLUSION

Accordingly, based on the forgoing argument and evidence, Heier respectfully request that this Honorable Court award her $1,872.30 on Counts V and VI of the Complaint (Breach of Settlement Agreement and Unjust Enrichment; $20,000.00 on Count VII (FLSA Retaliation); $77,550.00 on Count VIII (OMFWSA retaliation): and $15,671.50 in attorneys fees and costs, for a total of $115,093.80, and enter judgment against all Defendants for this amount, joint and severally.

Respectfully submitted,

/s/ *Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Jessica Heier*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing Motion for Default Judgment and Award of Damages was served upon the following Defendants by regular U.S. Mail this 2nd day of July, 2020:

JEFF CZIKA
211 Baptist Circle
Northfield, Ohio, 44067

RONI CZIKA
211 Baptist Circle
Northfield, Ohio, 44067

BEAUTY CALL, LLC, DO BEAUTY CALL, LLC
c/o Statutory Agent, Roni Czika,
A.K.A Roni Klein
211 Baptist Circle
Northfield, Ohio, 44067

*/s/ Chris P. Wido*
Chris P. Wido
**THE SPITZ LAW FIRM, LLC**
