# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA S. HEIER, | ) | CASE NO. 5:19-cv-1955 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| JEFF CZIKA, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Plaintiff has filed a motion for default judgment and an award of damages against defaulting defendants Jeff Czika, Roni Czika, Beauty Call, LLC, and Do Beauty Call, LLC. (Doc. No. 18 ["Mot"].) In the motion, plaintiff abandoned Counts I through IV of the complaint. Subsequently, plaintiff gave notice of the dismissal of Roni Czika, due to bankruptcy (*see* Doc. No. 21), and of her intent to proceed against the remaining defendants solely on Counts V through VIII. As the Court turned its attention to the unopposed motion for default judgment, it began to question its subject matter jurisdiction, without which no valid judgment can be rendered. For the reasons set forth herein, this case is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## I.    Background

Plaintiff Jessica S. Heier ("Heier") filed a complaint on August 26, 2019 against Jeff Czika, Roni Czika, Beauty Call, LLC, and Do Beauty Call, LLC (collectively, "defendants"). (Doc. No. 1, Complaint ["Compl."].) Defendant Roni Czika is alleged to be the president and/or owner, with co-owner defendant Jeff Czika, of the two limited liability companies, who are alleged to "form[]

a single enterprise" within the meaning of the Fair Labor Standards Act ("FLSA"). (Compl. ¶¶ 5–7, 16.) In fact, throughout the complaint, Heier treats the two LLCs as if they are the same entity, typically referring to them collectively as "Do Beauty Call, LLC" or "Studio B.C." (*See, e.g.*, Compl. ¶ 19 (alleging that Heier was "lead stylist and salon manager at a salon operated under Beauty Call and Do Beauty Call, known as 'Studio B.C.'"); *see also* Compl. ¶¶ 19–77 (captioned as "Facts Related To Claims Against Do Beauty Call LLC").) Defendants are further alleged to be an "employer" within the meaning of the FLSA and Ohio Rev. Code § 4111.14(B). (*Id.* ¶¶ 6, 8, 9.) Heier asserts federal question subject matter jurisdiction based on the alleged FLSA claims and supplemental jurisdiction over the state law claims. (*Id.* ¶¶ 13–14.)

In paragraphs 19 through 77 of the complaint, Heier alleges in some detail[1] how, between May 1 and June 22, 2017, she was employed by defendants at an hourly rate of $8.75, plus a monthly commission of 20% of the total value of salon services performed. (*Id.* ¶¶ 20–21.) At the time Heier was hired, both Roni Czika and Jeff Czika told her she was an independent contractor, although she was expected to report all the hours she worked, including those over 40 in a given week, by way of defendants' electronic time keeping system. (*Id.* ¶¶ 22–23, 25.) Heier alleges that, despite her independent contractor label, she was in reality a non-exempt employee within the meaning of the FLSA. (*Id.* ¶ 36.)

Heier alleges she was never paid overtime and, in fact, was generally not paid in accordance with her agreement with defendants and/or was unable to negotiate paychecks given to her by defendants due to stop-payment orders. (*Id.* ¶¶ 37, 39–50.) When Heier challenged her insufficient paychecks, defendants agreed to an alternate arrangement whereby they would pay her cell phone

---

[1] Given that no defendant has filed a responsive pleading, for purposes of the instant opinion, the allegations of the complaint are taken as true.

2

bill and her car payment until they had sufficient funds to give her a paycheck, an arrangement that ultimately failed. (*Id*. ¶¶ 51, 61.) On June 22, 2017, defendants terminated Heier's employment, allegedly after she questioned them regarding their "unlawful payroll practices and her missing paychecks, overtime payments, and commission checks." (*Id*. ¶ 77.)

Heier sued Jeff Czika, Roni Czika, and Beauty Call, LLC d/b/a Studio B.C./Beauty Call under the FLSA, also asserting claims under Ohio wage laws, as well as claims grounded in contract and claims for retaliatory discharge. (*Id*. ¶ 78, citing *Jessica Heier v. Beauty Call, LLC*, Case No. 5:17-cv-1732 ("*Heier I*")[2].) Do Beauty Call, LLC was not a party to *Heier I*. (*Id*. ¶ 79.)

On April 26, 2018, the parties to *Heier I* reached a settlement. (*Id*. ¶ 80.) The three defendants in *Heier I* were to pay Heier $2,250.00 over a period of six months; but they made only one payment of $381.00. (*Id*. ¶¶ 84–85.) Heier alleges that this "breach of the Settlement Contract[] necessitat[ed] this action to enforce the Settlement." (*Id*. ¶ 87.)

None of the four defendants in this action made an appearance or filed an answer to the complaint or any other responsive pleading. On February 19, 2020, on Heier's application, the Clerk noted the defaults of all four defendants. (Doc. No. 13.) On April 16, 2020, there being no activity in the case, the Court issued an order to show cause why the case should not be dismissed for want of prosecution. (Doc. No. 14.) On that same day, Heier filed a notice of settlement and sought a 24-month stay of the case to allow completion of the settlement. (Doc. No. 15.) On April 17, 2020, the Court acknowledged the settlement, but granted only a 30-day stay for the parties to submit their jointly-proposed dismissal entry. (Doc. No. 16.) On May 14, 2020, Heier notified the Court that settlement communications between the parties had broken down and she requested an

---

[2] Although the case was originally assigned to the docket of the undersigned, the parties subsequently consented to the jurisdiction of Magistrate Judge Kathleen B. Burke and the case was reassigned.

extension until June 26, 2020 to file a motion for default judgment. (Doc. No. 17.) The motion was granted the next day by non-document order.

On July 2, 2020, Heier filed her now-pending motion for default judgment (Doc. No. 18), later followed by her notice of dismissal of defendant Roni Czika (Doc. No. 21), having been informed of Roni Czika's bankruptcy (*see* Doc. No. 20).

## II.    Discussion

### A.    Legal Standards

Heier seeks judgment against the defaulting defendants, but "[a] judgment [would be] void … if the court that rendered it lacked jurisdiction of the subject matter …." *Antoine v. Atlas Turner*, 66 F.3d 105, 108 (6th Cir. 1995) (citation and quotation marks omitted). "[F]ederal Courts, being courts of limited jurisdiction, must examine their subject-matter jurisdiction throughout the pendency of *every* matter before them." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1419 n.2 (6th Cir. 1996) (citation and quotation marks omitted, emphasis in original). To decline to address the jurisdiction issue would be to allow the parties, through artful pleading, to expand the jurisdiction of the federal courts. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1075 (6th Cir. 1990) (citing *Basso v. Utah Power and Light Co.*, 495 F.2d 906, 910 (10th Cir. 1974)).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987); *see also Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908) (noting that the question of jurisdiction may be raised on the court's own motion); *Vaden v. Discover Bank*, 556 U.S. 49, 60, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009) ("Under the longstanding well-pleaded complaint rule,

4

however, a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'") (quoting *Mottley*, 211 U.S. at 152).

For purposes of 28 U.S.C. § 1331, a case arises under federal law when it is apparent from the face of the complaint that the plaintiff's cause of action was created by federal law. *Mottley*, 211 U.S. at 152. "Courts must look past artful pleading to determine the underlying reality of the core activities being challenged [in a claim]." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 814 (6th Cir. 2015).

Even where there is original subject matter jurisdiction due to a federal question contained in the complaint, if that claim is subsequently dismissed (or abandoned), it is in this Court's discretion to decline the exercise of supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3).

The Court concludes, as discussed below, that there is no remaining federal question claim and it should decline the exercise of supplemental jurisdiction.

### B.    Analysis

The instant complaint is set forth in eight counts.[3]  Counts I through IV were brought solely against defendant Do Beauty Call, LLC, whom Heier asserts was not part of *Heier I*. Counts I and II are claims under the FLSA for failure to pay minimum wage and failure to pay overtime, respectively. Count III is a wage claim under Ohio law and Count IV claims a breach of the settlement contract in *Heier I*. In her motion for default judgment against the defendants, Heier explicitly abandoned these four counts of the complaint "as she now believes that she is precluded from pursuing those claims based on the settlement agreement[.]" (Mot. at 76 n.1.)

---

[3] Notably, a significant number of the allegations in the instant complaint are nearly identical to those in *Heier I*.

5

Counts V through VIII are leveled against Jeff Czika, Beauty Call, LLC, and the now-dismissed (and bankrupt[4]) Roni Czika. Three of these four claims, as pleaded, are unquestionably state law claims. Count V alleges breach of the *Heier I* settlement contract; Count VI alleges unjust enrichment; and Count VIII alleges a state law claim of post-settlement retaliation.

Count VII is characterized as a claim for "FLSA retaliation." But this count, as alleged, is no more than an attack on the validity of the *Heier I* settlement agreement and is, therefore, simply another state law claim.

In Count VII, styled as "Post-Settlement FLSA Retalition [sic]," Heier alleges that she "engaged in protected activity under 29 U.S.C. § 215(a)(3) when she filed *Heier I*." (Compl. ¶ 155.) She then alleges that, "[a]s a means of retaliating against [her], [defendants] induced Heier to enter into the Settlement Contract under the false premise that [defendants] would pay Heier $2,250.00[,]" with "no intention of paying[,]" that as "[another] means of retaliating against [her], [defendants] … made false representations to Heier about their intent to pay the Settlement Payment if Heier dismissed the claims she asserted against them in *Heier I* with prejudice." (*Id*. ¶¶ 156–58.) She claims that defendants violated the FLSA by "show[ing] reckless disregard of the provisions … concerning retaliation by taking adverse actions against Heier because she instituted the *Heier I* litigation." (*Id*. ¶ 160.)

Even if these allegations are all true, they do not state a claim for FLSA retaliation. The anti-retaliation provision of FLSA[5] provides that an employer is prohibited from "discharg[ing] or

---

[4] *See* Case No. 20-50350, *In re Roni L. Czika, Debtor* (Chapter 7 voluntary petition, discharged 6/23/2020).

[5] This Court is not convinced that these defendants are/were covered by the FLSA. The complaint contains little more than boilerplate allegations claiming that all the defendants were "employers" within the meaning of the FLSA, that plaintiff "participated in the actual movement of things in interstate commerce by ordering supplies from out of state[,] processing credit card payments from out of state banks[,] and communicating with customers and potential customers of Defendants located in and outside of Ohio through telephone and internet communications." (Compl. ¶¶ 17, 18.)

*in any other manner* discriminat[ing] against [an] employee because such employee has filed [a] complaint or instituted ... any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3) (emphasis added). A prima facie case of FLSA retaliation requires a showing that (1) plaintiff engaged in protected activity under the FLSA; (2) her exercise of this right was known by the employer; (3) *the employer took an employment action adverse to her*; and (4) there was a causal connection between the protected activity and the adverse employment action. *Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

Heier was no longer an employee of the defendants when she brought this action (or when she brought *Heier I*). Even so, courts have recognized the possibility of post-employment retaliation claims. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S. Ct. 843, 136 L.E. 2d 808 (1997) (holding that the term "employees" in Title VII's antiretaliation provision includes former employees); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61, 126 S. Ct. 2405, 165 L.Ed. 2d 345 (2006) (rejecting the notion that, to be actionable, there must be "a link between the challenged retaliatory action and the terms, conditions, or status of employment[]"). Although the Court has found no Sixth Circuit case directly on point, other courts have found *Robinson* and *Burlington Northern* (both of which were Title VII cases) applicable in the FLSA context. *See, e.g.*, *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) ("The similar statutory language suggests that the Supreme Court's interpretation of "employee" in *Robinson*—to include former as well as current employees—and definition of retaliatory acts in *Burlington Northern* similarly

---

Plaintiff also alleges that the two LLCs "formed a single enterprise within the meaning of Section 3(r) of the FLSA, … had employees engaged in commerce …, and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00." (*Id.* ¶ 16.) If the FLSA *is* implicated, the allegation that the two LLCs form a single enterprise is further suggestion that Do Beauty Call, LLC, though not actually named in *Heier I*, was effectively included, thereby precluding both claims and issues against that entity.

apply in the FLSA context.") (cited by *Arias v. Raimondo*, 860 F.3d 1185, 1190 (9th Cir. 2017)). Given the similar statutory language between Title VII and the FLSA, there is no reason to believe the same principles would not apply in the FLSA context.

In *Burlington Northern*, the Court held that actionable retaliation need not be confined to "activity that affects the terms and conditions of employment[.]" 548 U.S. at 57. Rather, it broadly concluded that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and internal citations omitted).

Even if all Heier's allegations are true, they do not allege a claim for FLSA retaliation because they do not, and cannot, allege the requisite "materially adverse" action as defined by *Burlington Northern*. The alleged retaliatory conduct relevant to Count VII—that defendants, with no intention of paying, induced Heier to enter into a settlement agreement—would not have a deterrent effect on Heier's (or any other employee's) willingness to complain of an FLSA violation. To hold otherwise would simply stretch logic too far.[6]

Plaintiff is not alleging, as is often the case in post-employment retaliation cases, that defendants, in retaliation for her protected conduct, gave her a negative employment reference (as

---

[6] Heier relies upon *Burlington Northern* in her motion for default judgment to support her argument that Count VII is an FLSA retaliation claim. But the Court concludes that her reliance is misplaced.

8

in *Robinson*, *supra*), or sued her,[7] or reported her to some agency (like Immigration),[8] or filed a false police report,[9] all of which would meet the *Burlington Northern* test of "materially adverse [actions that] … might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68.

Heier alleges, essentially, that defendants lied to her when entering into the settlement of *Heier I*. This does not form the basis of a federal claim for FLSA retaliation. Heier would have had no way of knowing in advance that defendants might (or would) negotiate a settlement in bad faith and, therefore, she could not have been "dissuaded" from engaging in any protected activity (that is, dissuaded from filing her lawsuit).

At best, the allegations of Heier's "*properly* pleaded complaint[,]" *Caterpillar, Inc.,* 482 U.S. at 392 (emphasis added), constitute only a state law claim of fraud or fraud in the inducement, which would not be the basis for federal question jurisdiction. *See Berry v. Javitch, Block & Rathbone, L.L.P.*, 940 N.E.2d 1265, 1269 (Ohio 2010) ("the Berrys argue that Javitch fraudulently misrepresented facts to induce them to settle, making this a fraud in the inducement claim[]").

---

[7] *See, e.g.*, *Ward v. Wal-Mart Stores, Inc.*, 140 F. Supp. 2d 1220, 1231 (D.N.M. 2001) (noting that "a number of courts have held that the filing of lawsuits, not in good faith and instead motivated by retaliation, can be the basis for an unlawful retaliation claim") (internal quotation marks, citations, and alteration omitted); *Urquiola v. Linen Supermarket, Inc.*, No. 94-14-CIV-ORL-19, 1995 WL 266582, at *1 (M.D. Fla. Mar. 23, 1995) ("a state court defamation suit filed in retaliation for making an EEOC charge clearly violates Title VII").

[8] *See, e.g.*, *Liu v. Elegance Rest. Furniture Corp.*, No. 15-cv-5787, 2017 WL 4339476, at *5 (E.D.N.Y. Sept. 25, 2017) (finding that defendant-employer's text messages threatening to disclose to authorities plaintiff-employee's immigration status was an adverse employment action for the purposes of FLSA retaliation).

[9] *See, e.g.*, *Aviles v. Cornell Forge Co.*, 183 F.3d 598, 606 (7th Cir. 1999) ("a false report to the police that Aviles was armed and laying in wait outside the plant could certainly be construed as a retaliatory action meant to discourage Aviles from pursuing his claim").

## III.    Conclusion

Even if the Court assumes that the now-abandoned Counts I and II were properly included in the complaint and, therefore, sufficient to establish the requisite subject matter jurisdiction in the first instance, Counts V through VIII (as well as Counts III and IV), when properly construed, are all state law claims.[10] Although the Court could exercise supplemental jurisdiction and enter a default judgment against the defendants, it declines to do so, there being no federal claim remaining. *See* 28 U.S.C. § 1367(c)(3).

Therefore, plaintiff's motion for default judgment (Doc. No. 18) is denied and this case is dismissed without prejudice. That said, there is nothing to prevent Heier from bringing a breach of contract claim in state court[11] and this ruling is no bar to any such attempt.


**IT IS SO ORDERED**.

Dated: August 18, 2020

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[10] The claims in Counts V through VIII could not have been brought in this Court in the first instance. The Court will not assume bad faith on plaintiff's part by construing the complaint as attempting to manufacture federal question jurisdiction by improperly alleging four counts that plaintiff knew, even at the time of filing, were precluded by the *Heier I* settlement, or by improperly framing Count VII as FLSA retaliation.

[11] The Court notes that Heier filed a motion to enforce the settlement agreement in *Heier I*, but it was denied by Magistrate Judge Burke on May 16, 2019 (three months before the instant case was filed), because the final judgment entry in *Heier I* had not specified that the court would retain enforcement jurisdiction (despite plaintiff's "blatantly incorrect" representation in the motion that it did—*Heier I* Doc. No. 42 at Page ID # 178). Arguably, if this branch of the Court were to now entertain the instant complaint, including the state law claims relating to enforcement of the *Heier I* settlement agreement, Heier would effectively, and improperly, accomplish an end-run around Magistrate Judge Burke's ruling in *Heier I*.